UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
TRENTON DIVISION

| | |
|---|---|
| **KIMBERLY DUNCAN**<br>337 Cedar St.<br>South Amboy, NJ 08879<br><br>Plaintiff,<br><br>v.<br><br>**WELLS FARGO BANK, N.A.**<br>420 Montgomery Street<br>San Francisco, CA 94104<br><br>Defendant. | Case No.<br><br>Judge<br><br>**COMPLAINT**<br><br>**(Jury demand endorsed hereon)** |

Plaintiff Kimberly Duncan, through counsel, for her Complaint against Defendant Wells Fargo Bank, N.A., states:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Kimberly Duncan ("Plaintiff" or "Duncan") was the owner of residential real property, located at and commonly known as 13 Country Woods Lane, Pine Beach, New Jersey 08721 (the "Property") which she occupied as her primary, principal residence until the Property was sold through a short sale.

2. Duncan is a natural person residing in Middlesex County, New Jersey at her residence of 337 Cedar St., South Amboy, NJ 08879.

3. From approximately November 22, 2011, to February 25, 2014, Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") was the servicer of a note executed by Duncan (the "Note") and of a mortgage on the Property that secures said note (the "Mortgage") (collectively, the "Loan"). The Mortgage is attached as ***Exhibit 1.***

1

4. Wells Fargo is an incorporated business under the laws of the State of Delaware that maintains its principal place of business at 101 N. Phillips Ave., Sioux Falls, SD 57104.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy as more fully detailed throughout the Complaint exceeds $75,000.00 exclusive of damages sought of a punitive nature and/or interest and costs, and is between citizens of different States.

6. This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

8. Duncan has a private right of action under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* (the "CFA"), and such action provides for actual damages, treble damages, reasonable attorneys' fees, filing fees, and reasonable costs of suit. N.J.S.A. § 56:8-19.

## FACTUAL BACKGROUND

9. This case concerns material errors when Wells Fargo, in processing a loss mitigation application from Duncan and in otherwise discharging its contractual obligations to the owner of the loan and to Duncan as borrower, by its own admission, improperly denied Duncan a trial modification based on a "faulty calculation" and then concealed the existence of the improper denial for nearly three years after the "faulty calculation" was allegedly corrected.

10. On or around August 2011, Duncan began experiencing financial difficulties stemming from a prior divorce and the economic strains caused by the recession and, like millions of other Americans during that time frame, she defaulted on the Loan.

11. Over the course of the next two years, Duncan sought a loan modification from Wells Fargo.

12. Meanwhile, on August 10, 2012, with the application still pending, Wells Fargo filed a foreclosure action in the Ocean County Superior Court, Case No. F-015994-12 (the "Foreclosure Case"). The Foreclosure Case Docket is attached as ***Exhibit 2***.

13. Around July 2013, Wells Fargo told Duncan she did not qualify for a loan modification and advised her to give up her house through a short sale instead. Duncan, relying in Wells Fargo's representation, began pursuing a short sale.

14. Shortly after, Duncan advised Wells Fargo she had secured a buyer for the Property - her neighbor's daughter - without the use of a real estate agent. However, Wells Fargo told Duncan she was required to use a real estate agent to complete the sale.

15. In February 2014, Duncan sold the Property through a short sale. The Notice of Short Sale Approval and the HUD-1 Settlement Statement are attached as ***Exhibit 3***.

16. Duncan incurred nearly Twenty Four Thousand Dollars ($24,000.00) in settlement charges at closing including Twenty One Thousand Dollars ($21,000.00) for the forced used of a real estate agent. *See Exhibit 3*.

17. On or about August 3, 2018, Wells Fargo filed a Form 10-Q with the United States Securities and Exchange Commission. The Form 10-Q is attached as ***Exhibit 4***.

18. The Form 10-Q identified a:

> [C]alculation error that affected certain accounts that were in the foreclosure process between April 13, 2010, and October 20, 2015, when the error was corrected … [a]s a result of this error, approximately 625 customers were incorrectly denied a loan modification or were not otherwise offered a modification in cases where they would have otherwise qualified. In approximately 400 of these instances … a foreclosure was completed.

*See Exhibit 4*.

19. On or about September 12, 2018, Wells Fargo sent correspondence to Duncan (the "WF Letter") with the subject: "We made a mistake when we reviewed you for payment assistance." The WF Letter is attached as **Exhibit 5**.

20. The WF Letter admits that "Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A." *See Exhibit 5*.

21. The WF Letter states:

> We have some difficult news to share. When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. **If it had been correct, you would have been approved for a trial modification.**
>
> **We want to make things right.**

*See Exhibit 5* (emphasis added).

22. Through the WF Letter, Wells Fargo provided Duncan with a check in the amount of Fifteen Thousand Dollars ($15,000.00).

23. The WF Letter states that if Duncan feels that Wells Fargo has not "made things right" she could consider mediation and still cash the check. *See Exhibit 5*.

24. As Duncan did not feel that Wells Fargo "made things right", on or about September 25, 2018, she filled out the mediation form (the "Mediation Request Form"). The Mediation Request Form is attached as **Exhibit 6**.

25. The Mediation Request Form stipulates that Duncan is "not waiving any legal claims by participating in the process." *See Exhibit 6*.

26. Duncan supplemented the Mediation Request Form to explain how Wells Fargo's "faulty calculation" affected her life (the "Explanation Letter"). The Explanation Letter is attached as **Exhibit 7**.

27. In the Explanation Letter, Duncan explains that she spent two unproductive years in loss mitigation. Duncan submitted to Wells Fargo all the documents it requested and jumped through every hoop put in front of her. *See Exhibit 7*.

28. On or about October 11, 2018, Wells Fargo sent correspondence to Duncan (the "Resolution Letter") with the subject: "We've resolved your request, and your payment is enclosed." The Resolution Letter is attached as **Exhibit 8**.

29. Through the Resolution Letter, Wells Fargo provided Duncan with a check in the amount of Thirty Two Thousand Five Hundred Dollars ($32,500.00).

30. Wells Fargo seemingly considered the request for mediation, as it provided Duncan with an additional check. However, as expressed by Duncan in the Mediation Request Form and the Explanation Letter, the amounts contained in Wells Fargo's checks failed to make things right. *See Exhibit 6* and *Exhibit 7*.

31. As Wells Fargo failed to "make things right", Duncan retained DannLaw to file the current matter against Wells Fargo for violations of the CFA, the covenant of good faith and fair dealing, and common law fraud based upon the wrongful denial of the loss mitigation application and concealment of the calculation error for nearly three (3) years, all to Duncan's great prejudice and damage.

32. Wells Fargo's conduct directly and proximately caused the following damages to Duncan:

A. Wells Fargo took away the opportunity for Duncan to obtain a permanent loan modification and remain in the Property;
B. Wells Fargo forced Duncan to spend $21,000.00 on a real estate agent when Duncan had already secured a buyer;
C. The Property's value has increased by approximately $50,000.00 since the forced short sale. Wells Fargo took away the opportunity for Duncan to realize this equity; a copy of the Zillow valuation is attached as *Exhibit 9*;
D. Duncan had to retain legal counsel to file this complaint which would have never been needed had Wells Fargo correctly offered Duncan a trial modification or met Duncan's demands in mediation;
E. Duncan suffered extreme emotional distress, resulting from:
   a. The unproductive and repetitive loss mitigation process;
   b. The wrongful denial of her loss mitigation application due to the "faulty calculation" error;
   c. The continuance of the foreclosure before and after the "faulty calculation" error;
   d. The loss of the home that her four children grew up in; and,
   e. Having no other option but to move to a virtually uninhabitable apartment for two years as the foreclosure and delays in reviewing her loss mitigation application destroyed her credit.
F. Duncan sought medical treatment for panic attacks resulting from the lasting effect of the emotional trepidation caused by Wells Fargo;
G. Duncan hoped and believed that by entering into a trial modification and a permanent modification of the Loan that she would be able to immediately begin the long process of improving her credit standing.
   a. Wells Fargo reported Duncan to the Credit Reporting Agencies as delinquent on the Loan leaving her unable to obtain credit or insurance at reasonable rates.
   b. Some of Duncan's credit cards were canceled or the available limits were lowered.
   c. Although Wells Fargo stated it would reach out to the Credit Reporting Agencies to remove any negative reporting, it waited years to correct the damage (even apparently after it knew it had made a mistake by not approving her for a trial modification). *See Exhibit 5*.

## COUNT ONE
## VIOLATION OF N.J.S.A § 56:8-2, THE CONSUMER FRAUD ACT (CFA)

33. Duncan restates and incorporates all of her statements and allegations contained in paragraphs 1 through 32, in their entirety, as if fully rewritten herein.

34. Duncan is a "person" as defined by N.J.S.A. § 56:8-1(d) as she is a natural person.

35. Wells Fargo is a "person" as defined by N.J.S.A. § 56:8-1(d) because Wells Fargo is a partnership, corporation, company, trust, business entity, or business association.

36. The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

N.J.S.A. § 56:8-2.

37. In the operation of its business, Wells Fargo engaged in the use of unlawful practices through its conduct relating to Duncan's loss mitigation review and aggressively pursuing foreclosure against her.

38. The CFA applies to mortgage servicing generally and to unconscionable business practices with regard to modification of mortgage loans.

39. Despite Duncan having complied with all the obligations as required by Wells Fargo's loss mitigation process and otherwise qualifying for a trial modification, Wells Fargo misrepresented to Duncan that she had not qualified for the trial modification, when in fact she <u>had</u> qualified for the trial modification program which would have allowed her to remain in the property. *See Exhibit 5.*

40. As a result of this deception, misrepresentation and unconscionable business practice, Wells Fargo continued with the foreclosure action.

41. Wells Fargo admits that but for its error, Duncan "would have been approved for a trial modification." *See Exhibit 5*.

42. Wells Fargo's affirmative misrepresentation in 2013 about Duncan not qualifying for a loan modification constitutes an unlawful practice under the CFA.

43. Wells Fargo discovered the existence of the "faulty calculation" as early as October 20, 2015, but knowingly concealed or omitted this information from Duncan, the other impacted borrowers, and its shareholders until nearly three years later.

44. These acts in concealing the "faulty calculation" constitute unlawful acts in violation of the CFA.

45. Wells Fargo admits the "faulty calculation" error began in April 23, 2010, yet the error was still affecting customers three years later during the time of Duncan's loan modification review. Wells Fargo's failure to fix the "faulty calculation" during this 3-year period constitute an unconscionable commercial practice in violation of the CFA.

46. In the operation of its business, Wells Fargo has engaged in the use of unconscionable, deceptive, and/or fraudulent commercial practices through its conduct in failing to provide complete information to borrowers who request information about the "faulty calculation" or information specific to their individual loan.

47. Each unconscionable practice, false promise, misrepresentation, and/or knowing omission of material fact by Wells Fargo described, *supra*, constitutes a separate violation under the CFA.

48. Wells Fargo's conduct has caused Duncan to suffer ascertainable losses, as plead, *supra*, at ¶ 32.

## COUNT TWO
## VIOLATION OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

49. Duncan restates and incorporates all of her statements and allegations contained in paragraphs 1 through 32, in their entirety, as if fully rewritten herein.

50. Wells Fargo is in privity of contract with Duncan, through the Loan, and as such is obligated by contract and common law to act in good faith and to deal fairly with Duncan. *See Exhibit 1*.

51. The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

52. Wells Fargo has breached this duty by delaying the loss mitigation process, ultimately denying Duncan the benefit of a trial modification based on a "faulty calculation", and continuing the foreclosure process.

53. Wells Fargo has acted in bad faith, dishonestly, and with an improper motive to injure the rights of Duncan.

54. Duncan suffered actual damages, as plead, *supra*, at ¶ 32, that were caused by Wells Fargo's conduct.

## COUNT THREE
## COMMON LAW FRAUD

55. Duncan restates and incorporates all of her statements and allegations contained in paragraphs 1 through 32, in their entirety, as if fully rewritten herein.

56. A cause of action for New Jersey common law fraud requires a plaintiff to prove: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.

57. Wells Fargo made material misrepresentations of a presently existing or past fact when it misrepresented to Duncan in 2013 that she did not qualify for a loan modification.

58. Wells Fargo was aware of this faulty calculation since at least October 20, 2015 yet continued to conceal this error from Duncan until discretely disclosing this information in their August 3, 2018 10-Q.

59. Wells Fargo continues to conceal the details surrounding the "faulty calculation" error and refuses to provide Duncan with more information relating to her loss mitigation denial and how Wells Fargo discovered and corrected the error.

60. Wells Fargo knew or should have known that the misrepresentations were false, as inferred by its unexplainable conduct in failing to notify Duncan, and other borrowers who lost their homes, of the "faulty calculation" for nearly three years after the error was corrected.

61. Wells Fargo intended that Duncan rely on the misrepresentations in order to continue with the Foreclosure Case, push Duncan towards a short sale, and avoid potential legal claims.

62. Duncan reasonably relied on the misrepresentations because there was no possible way to discover that she was wrongfully denied until Wells Fargo informed her five years later of the "faulty calculation".

63. Duncan suffered actual damages, as plead, *supra*, at ¶ 32, that were caused by Wells Fargo's conduct.

64. As Wells Fargo's conduct was willfully and wantonly reckless or malicious, Duncan is entitled to punitive damages.

### **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Kimberly Duncan prays that this Court enter its order granting judgment against Defendant Wells Fargo Bank, N.A. for the following:

A. Actual damages of at least $75,000.00 and in the amount to be determined at trial as to Counts One, Two, and Three;

B. Treble damages as to Count One;

C. Costs and reasonable attorney fees as to Count One;

D. Punitive damages as to Count Ones and Three;

E. Such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
DannLaw
1 Meadowlands Plaza, Suite 200
East Rutherford, NJ 07073
(216) 373-0539
Fax (216) 373-0536
notices@dannlaw.com

## **JURY DEMAND**

Duncan hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
DannLaw
