# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## TRENTON DIVISION

**KIMBERLY DUNCAN,**

        Plaintiff,

    vs.

**WELLS FARGO BANK, N.A.,**

        Defendants.

Case No. 3:19-cv-00172-BRM-TJB

Judge Brian R. Martinotti

Magistrate Judge Tonianne J. Bongiovanni

---

## RESPONSE OF KIMBERLY DUNCAN TO DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS

---

**DANN LAW**
Javier L. Merino
Marc E. Dann
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: 216-373-0539
Fax: 216-373-0536
notices@dannlaw.com

# I.  TABLE OF CONTENTS

I.  TABLE OF CONTENTS ................................................................................. i

II.  TABLE OF AUTHORITIES ......................................................................... ii

III.  FACTUAL BACKGROUND ......................................................................... 1

IV.  LEGAL STANDARD .................................................................................... 2

V.  ARGUMENT ................................................................................................. 3

    A.  DUNCAN'S CFA AND COMMON LAW FRAUD CLAIMS MEET THE
    HEIGHTENED PLEADING STANDARD OF FED. R. CIV. P. 9(b) ............................ 3

    B.  DUNCAN SUFFICIENTLY PLEADS A CLAIM FOR VIOLATIONS
    OF THE CFA ........................................................................................... 5

        1.  Duncan Plausibly Alleges a Causal Relationship Between Wells Fargo's
        "Calculation Error" and her Ascertainable Losses. ...................................... 6

        a. Duncan Plausibly Pleads that Wells Fargo's Conduct Resulted in her Damages ..... 7

        b. Duncan Has Alleged Facts Within her Knowledge to Support that There Is a
        Causal Nexus Between Wells Fargo's Conduct and her Damages ....................... 8

        2.  Duncan Plausibly Pleads that Wells Fargo Knowingly Concealed the Faulty
        Calculation Error and Intended that Duncan Rely Upon the Concealment. ............... 11

    C.  DUNCAN SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF THE
    IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING ............................. 12

        1.  Wells Fargo Engaged in Conduct Without Good Faith and for the Purpose of
        Foreclosing on Duncan's Home .................................................................. 13

        2.  Wells Fargo's Conduct Shows that It Did Not Consider Duncan's Breach of the
        Mortgage Loan to a Material Breach or Excused Duncan's Performance. ............... 14

    D.  DUNCAN SUFFICIENTLY ALLEGES A CLAIM FOR COMMON LAW FRAUD ... 16

    E.  DUNCAN SUFFICIENTLY ALLEGES A CLAIM FOR INTENTIONAL
    INFLICTION OF EMOTIONAL DISTRESS .................................................... 18

    F.  DUNCAN WITHDRAWS HER CLAIMS FOR NEGLIGENT INFLICTION OF
    EMOTIONAL DISTRESS AND NEGLIGENCE .............................................. 20

    G.  THE ECONOMIC LOSS DOCTRINE DOES NOT APPLY TO DUNCAN'S
    NON-STATUTORY TORT CLAIMS ............................................................ 20

    H.  DUNCAN IS ENTITLED TO PUNITIVE DAMAGES ..................................... 24

VI.  CONCLUSION ............................................................................................ 26

## II.    TABLE OF AUTHORITIES

**Cases**

*49 Prospect St. Tenants Asso v. Sheva Gardens*, 547 A.2d 1134 (N.J. App. Div. 1988) ............ 20

*Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337 (D.N.J. 2006) ........................ 18

*Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282 (D.N.J. 2009) ............................................. 21

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 2

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 2

*Biederman v. Mitsubishi Motors Credit of Am.*, 753 A.2d 1251 (N.J. Super. Ct. 2000) ............. 15

*Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009) ........................................................ 6

*Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civil Action No. 06-5391 (FLW),
     2007 U.S. Dist. LEXIS 60790 (D.N.J. Aug. 20, 2007) ....................................................... 21

*Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988) ........................................... 18, 20

*Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*,
     638 A.2d 1288 (N.J. 1994) ......................................................................................... 20, 21, 22

*Cox v. Sears Roebuck & Co.*, 647 A.2d 454 (N.J. 1994) ............................................................... 5

*D'Agostino v. Maldonado*, 78 A.3d 527 (N.J. 2013) ............................................................... 9, 10

*D'Alessandro v. Ocwen Loan Servicing, LLC*, No. 18-cv-01290 (PGS)(LHG),
     2018 U.S. Dist. LEXIS 86482 (D.N.J. May 23, 2018) ........................................................... 5

*Ferguson v. JONAH*, 143, 136 A.3d 447 (N.J. Super. Ct. 2014) ................................................ 10

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) ........................................................... 2

*Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997) .............................................. 5, 16

*Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103 (N.J. 2011) ..................................................... 5

*Graddy v. Deutsche Bank*, No. 11-3038 (RBK/KMW),
     2013 U.S. Dist. LEXIS 41203 (D.N.J. Mar. 25, 2013) ........................................................ 13

*Grande Vill. LLC v. CIBC Inc.*, No. 1:14-cv-3495 (NLH/JS),
     2018 U.S. Dist. LEXIS 80662 (D.N.J. Mar. 30, 2018) ................................................... 14, 15

*Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291 (3d Cir. 1995) ........................................ 21

*Hankins v. Philadelphia Contributionship Ins. Co.*, 771 F.App'x 148 (3d Cir. 2019) ................. 6

*In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198 (3d Cir. 2002) ................................................... 2

*Jerkins v. Anderson*, 922 A.2d 1279 (N.J. 2007) ...................................................................... 22

*Kam Int'l v. Franco Mfg. Co.*, Civil Action No. 2:10-02733,
     2010 U.S. Dist. LEXIS 135455 (D.N.J. Dec. 22, 2010) ...................................................... 20

*Kearney v. Bayerische Motoren Werke Aktiengesellschaft*,
     No. 17-13544 (WHW-CLW), 2018 U.S. Dist. LEXIS 147746 (D.N.J. Aug. 29, 2018) ......... 21

*Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136 (3d Cir. 2019) ................................................ 11

*Lone Star Nat'l Bank, Nat'l Ass'n v. Heartland Payment Sys.*,
     729 F.3d 421 (5th Cir. 2013) ......................................................................................... 21, 22

*Maertin v. Armstrong World Indus.*, 241 F. Supp. 2d 434 (D.N.J. 2002) .................................... 24

*Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-cv-07849 (WHW),
     2013 U.S. Dist. LEXIS 146209 (D.N.J. Oct. 9, 2013) ........................................................... 3

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) .................................................... 6

*Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938 (E.D. Cal. 2015) .............................. 23

*Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427 (D.N.J. 2012) ............................................. 6, 10

*Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86 (3d Cir. 2008) ............................................ 14

*Pasquale v. Influential Partners, LLC*, Civil Action No. 3:16-cv-00012 (PGS)(TJB),
    2016 U.S. Dist. LEXIS 55901 (D.N.J. Apr. 26, 2016) ............................................... 9

*People Express Airlines v. Consol. Rail Corp.*, 495 A.2d 107 (N.J. 1985) ................................. 22

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008) ........................................................... 2

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644 (3d Cir. 1998) ................................. 3

*Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786 (3d Cir. 1984) ........................ 3

*Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575 (N.J. 1997) .......................................... 12, 13

*Sun Chem. Corp. v. Fike Corp.*, Civil Action No. 13-4069 (JMV),
    2017 U.S. Dist. LEXIS 202865 (D.N.J. Dec. 11, 2017) ............................................ 6

*Unifoil Corp. v. Cheque Printers & Encoders*, 622 F. Supp. 268 (D.N.J. 1985) ........................ 21

*United Jersey Bank v. Kensey*, 704 A.2d 38 (N.J. Super. Ct. App. Div. 1997) ............................ 21

*Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. Super. App. Div. 2000) ........ 6

*Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132 (3d Cir. 2014) ................................................. 5

*Westmont Dev. Grp., LLC v. Twp. of Haddon*, 625 F. Supp. 2d 178 (D.N.J. 2009) .................... 16

*Wilkins v. ING Bank FSB*, Civil Action No. 10-5334 (SRC),
    2011 U.S. Dist. LEXIS 101560 (D.N.J. Sep. 1, 2011) ............................................. 18

*Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239 (D.N.J. 2001) ................................... 18

**Statutes**

N.J.S.A. § 12A:2-103 ............................................................................................................. 13, 14

N.J.S.A. § 2A:15-5.10 .................................................................................................................. 25

N.J.S.A. § 2A:15-5.12 ............................................................................................................ 24, 26

N.J.S.A. § 56:8-19 ........................................................................................................................ 10

**Rules**

Fed. R. Civ. P. 12 .......................................................................................................................... 2

Fed. R. Civ. P. 9 ....................................................................................................................... 3, 16

Plaintiff Kimberly Duncan ("Duncan"), through counsel, for her response to the motion to dismiss (D.E. 36-1 or the "Motion") filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), states:

## III.    FACTUAL BACKGROUND

This case concerns material errors when Wells Fargo, in processing a loss mitigation application from Duncan, by its own admission, improperly denied Duncan a trial modification based on a "faulty calculation error". Wells Fargo then concealed the existence of this serious mistake that Wells Fargo, by its own admissions, knew or should have known about for at least three years after the faulty calculation error was allegedly corrected. On or around August 2011, Duncan began experiencing financial difficulties and fell behind on her mortgage note. *See First Amended Complaint* ("FAC") (D.E. 32, ¶ 39). Over the course of the next two years, Duncan, determined to save the home where she resided with her children, sought a loan modification from Wells Fargo. (D.E. 32, ¶ 40).

On August 10, 2012, Wells Fargo filed a foreclosure action in the Ocean County Superior Court, Case No. F-015994-12 (the "Foreclosure Case"), while Duncan had a loss mitigation application pending. (D.E. 32, ¶ 41). On June 26, 2013, Wells Fargo denied Duncan for a trial modification that would have allowed her to remain in her home. (D.E. 32, ¶ 42). Shortly after, around July 2013, Wells Fargo told Duncan that she did not qualify for a trial modification and advised her to give up her house through a short sale instead. (D.E. 32, ¶ 43). Duncan, relying on Wells Fargo's representation, began pursuing a short sale. (D.E. 32, ¶ 43). Duncan advised Wells Fargo she had secured a buyer for her home without the use of a real estate agent. (D.E. 32, ¶ 44). However, Wells Fargo told Duncan she was required to use a real estate agent to complete the sale. (D.E. 32, ¶ 44). In February 2014, Duncan sold the Property through a short sale. (D.E. 32, ¶ 45).

Duncan incurred nearly Twenty-Four Thousand Dollars ($24,000.00) in settlement charges at closing including Twenty-One Thousand Dollars ($21,000.00) for the forced used of a real estate agent. (D.E. 32, ¶ 46).

On or about August 3, 2018, Wells Fargo filed a Form 10-Q where it admitted the existence of the faulty calculation error. (D.E. 32, ¶¶ 47-48). On or about September 12, 2018, Wells Fargo sent correspondence to Duncan (the "WF Letter") with the subject: "We made a mistake when we reviewed you for payment assistance." (D.E. 32, ¶ 49). The WF Letter states, "When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. If it had been correct, you would have been approved for a trial modification." (D.E. 32, ¶ 51).

## IV.    LEGAL STANDARD

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).

In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary,

2

a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-679.

The FAC meets and exceeds these standards.

## V.    ARGUMENT

### A.    DUNCAN'S CFA AND COMMON LAW FRAUD CLAIMS MEET THE HEIGHTENED PLEADING STANDARD OF FED. R. CIV. P. 9(b)

Fed. R. Civ. P. 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." *Id.* Rule 9(b) requires allegations concerning the particularity of the circumstances of the alleged fraud. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998). Pleading the date, place, or time of the fraud is not necessary so long as plaintiffs use an "alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984). Several Courts have held that Rule 9(b)'s heightened pleading standard should be applied with "some flexibility" and the standard should be relaxed in cases based on fraudulent omissions or concealment. *Rolo*, 155 F.3d at 658; *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 2:12-cv-07849 (WHW), 2013 U.S. Dist. LEXIS 146209, at *40 (D.N.J. Oct. 9, 2013). "This is because 'a plaintiff in a fraud by omission suit will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim.'" *Majdipour*, 2013 U.S. Dist. LEXIS 146209, at *41.

Wells Fargo admits in the WF Letter that it made a false representation. (D.E. 32-5). Wells Fargo is well aware of what happened and provided the "alternative means of injecting precision and some measure of substantiation" all by itself. (D.E. 32-5). As detailed in the FAC, Duncan

provides the "most basic information" related to Wells Fargo's representation. On July 26, 2013, Wells Fargo made the decision to deny Duncan's request for a loan modification because of the faulty calculation error, and then, shortly after, Wells Fargo conveyed this information to Duncan. (D.E. 32, ¶¶ 42-43). The FAC provides the who (Wells Fargo), what (informed Duncan that she was denied a trial modification), when (on July 26, 2013), and how (Wells Fargo used a faulty mortgage loan modification underwriting tool) of the events at issue. (D.E. 32, ¶¶ 42-43; D.E. 32-4).

Duncan provides details as to why it is plausible that Wells Fargo knowingly concealed or omitted the existence of calculation error for at least three years. Wells Fargo entered into consent orders and was subject to strict oversight. (D.E. 32, ¶¶ 12-38). Wells Fargo was required to regularly and properly audit its mortgage modification tool for compliance. (D.E. 32, ¶¶ 13, 19). Wells Fargo had motive to conceal errors to avoid further penalty. (D.E. 32, ¶ 26) ("Well Fargo decided not to tell anybody it had discovered this error—likely as part of an effort to avoid a larger penalty from the OCC and ensure that the OCC would terminate its supervision of the Bank under the 2011 Consent Order and lift the business restrictions it had imposed in 2015."). Wells Fargo admits that the faulty calculation error affected customers as early as April 13, 2010 and continued to cause wrongful denials of trial modifications until October 20, 2015. (D.E. 32-4). Despite discovering the error in October 2015, Wells Fargo did not inform the public until June 30, 2018 and Duncan until September 2018. (D.E. 32-4; D.E. 32-5). It is certainly plausible that Wells Fargo discovered the faulty calculation error earlier than October 2015 based on the requirement that Wells Fargo regularly conducts audits of its loss mitigation procedures, Wells Fargo's motive to avoid penalty, and Wells Fargo's past behavior in failing to disclose the faulty calculation error for three years.

**B.      DUNCAN SUFFICIENTLY PLEADS A CLAIM FOR VIOLATIONS OF THE CFA**

Since its enactment in 1960, the CFA "is one of constant expansion of consumer protection." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 364 (N.J. 1997). The CFA "provides a private cause of action to consumers who are victimized by fraudulent practices in the marketplace." *Gonzalez v. Wilshire Credit Corp.*, 25 A.3d 1103, 1114 (N.J. 2011). To state a CFA claim, a consumer must plead: (1) An unlawful practice; (2) an ascertainable loss; and, (3) a causal relationship between the two. *Id.* at 1115. Even if a consumer does not state an ascertainable loss, the consumer "could nonetheless demonstrate a violation of the CFA and, by doing so, recover attorney's fees and costs." *D'Alessandro v. Ocwen Loan Servicing, LLC*, No. 18-cv-01290 (PGS)(LHG), 2018 U.S. Dist. LEXIS 86482, at *14 (D.N.J. May 23, 2018) (quoting *Watkins v. DineEquity, Inc.*, 591 Fed. Appx. 132, 141 (3d Cir. 2014)); *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 465 (N.J. 1994).

Duncan's CFA claim alleges that Wells Fargo committed at least four violations: (1) Wells Fargo misrepresented to Duncan that she did not qualify for a trial modification, when in fact she did qualify for a trial modification that would have allowed her to remain in her home. (D.E. 32, ¶ 68; D.E. 32-5); (2) Wells Fargo discovered the existence of the faulty calculation error on October 20, 2015, at the latest, but knowingly concealed or omitted its existence from Duncan for nearly three years. (D.E. 32, ¶ 72; D.E. 32-4); (3) Wells Fargo failed to correct the faulty calculation error from April 23, 2010 to October 20, 2015. (D.E. 32, ¶ 74); and, (4) Wells Fargo refuses to provide complete information to Duncan related to the faulty calculation error and how it corrected the error. (D.E. 32, ¶ 75).

5

### 1.   Duncan Plausibly Alleges a Causal Relationship Between Wells Fargo's "Calculation Error" and her Ascertainable Losses.

"To establish causation … a consumer merely needs to demonstrate that he or she suffered an ascertainable loss as a result of the unlawful practice." *Sun Chem. Corp. v. Fike Corp.*, Civil Action No. 13-4069 (JMV), 2017 U.S. Dist. LEXIS 202865, at \*17 (D.N.J. Dec. 11, 2017) (internal quotations omitted). "The CFA does not demand that a plaintiff necessarily point to an actually suffered loss or to an incurred loss, but only to one that is 'ascertainable.'" *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741 (N.J. 2009).

"CFA causation is not infinitely elastic in a but-for sense; a plaintiff's losses must be particularly proximate to a misrepresentation or unlawful act of the defendant condemned by the [CFA]." *Sun. Chem.*, 2017 U.S. Dist LEXIS 202856, at \*17-18 (quoting *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 437 (D.N.J. 2012)); *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012). "The Supreme Court of New Jersey has explained that proximate cause is that combination of logic, common sense, justice, policy, and precedent that fixes a point in a chain of events, some foreseeable and some unforeseeable, beyond which the law will bar recovery." *Hankins v. Philadelphia Contributionship Ins. Co.*, 771 F.App'x 148, 151 (3d Cir. 2019) (citations and internal quotations omitted). "So long as the injury or harm suffered was within the realm of reasonable contemplation, the injury or harm is foreseeable." *Id.* "Because the foreseeability determination often requires a close analysis of facts, it is generally a jury issue." *Id.* Duncan is required to prove that Wells Fargo's conduct was a cause of her damages, not the sole cause of loss. *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 752 A.2d 807 (N.J. Super. App. Div. 2000).

**a.     Duncan Plausibly Pleads that Wells Fargo's Conduct Resulted in her Damages.**

As an initial matter, Wells Fargo confusingly states that "Duncan provides no factual basis for her allegation that a July 2013 denial was impacted by the calculation error." (D.E. 36-1, p. 10). At the pleading stage, Duncan's factual allegations and the exhibits to the FAC are to be considered, not Wells Fargo's contradictory statements. Duncan sufficiently pleads that Wells Fargo's faulty calculation error lead to misrepresentations and knowingly omissions, which in turn forced Duncan into a short sale of her home and Duncan's other pecuniary and non-pecuniary damages.

In the WF Letter, Wells Fargo states: "When you were considered for a loan modification, you weren't approved, and now we realize that you should have been. We based our decision on a faulty calculation, and we're sorry. If it had been correct, you would have been approved for a trial modification." (D.E. 32-5). The WF Letters is an admission by Wells Fargo that it improperly denied Duncan for a trial modification. (D.E. 32-5). The FAC provides the date of that decision - July 26, 2013. (D.E. 32, ¶ 42). Shortly after July 26, 2013, Wells Fargo informed Duncan that she did not qualify for a loan modification and advised her to give up her house through a short sale instead. (D.E. 32, ¶ 43). There is no "alleged" denial of Duncan's request for loss mitigation because Wells Fargo admits it did not approve Duncan. (D.E. 32-5). Since Wells Fargo admits that Duncan was denied a trial modification based on a "faulty calculation," Duncan alleges the date of that decision, and Duncan alleges that Wells Fargo pushed her towards a short sale after informing her of the decision, Duncan provides factual basis for her allegation that her loss mitigation application denial was impacted by Wells Fargo's calculation error.

Wells Fargo wants to raise the pleading burden to require Duncan to make allegations outside of the scope of the instant matter. Wells Fargo wants Duncan to allege that she would have

accepted a trial modification offer, remitted all trial modification payments, and remitted all permanent modification payments. (D.E. 36-1, p. 10). However, Duncan is required to plead that her claims are plausible, not certain, and Wells Fargo provides no authority that Duncan must plead allegations related to every single possible variable. Nonetheless, Duncan alleges that she engaged Wells Fargo for two years in order to secure a loan modification – indicating that she intended to make the necessary trial modification payments and every single permanent modification payment in order to save her home. (D.E. 32, ¶ 40). Wells Fargo fails to point to any allegation or exhibit of the FAC to show that Duncan did not want to save her home.

### b.   Duncan Has Alleged Facts Within her Knowledge to Support that There Is a Causal Nexus Between Wells Fargo's Conduct and her Damages.

The FAC points to categories of damages that are directly and proximately caused by Wells Fargo's conduct. Using the "combination of logic, common sense, justice, policy, and precedent" it is clear that Wells Fargo's faulty calculation error is the proximate cause of Duncan's damages.

Wells Fargo took away the opportunity for Duncan to obtain a permanent modification and remain in her home. (D.E. 32, ¶ 62(A)). This is supported the notion of common sense and certainly "within the realm of reasonable contemplation." Duncan's Explanation Letter provides context concerning Duncan's commitment to staying in her home. (D.E. 32-7). Duncan attempted to secure a loan modification over a two-year period where she gave Wells Fargo everything it asked for and jumped through every hoop. (D.E. 32, ¶ 40); (D.E. 32-7). Duncan has four children that she raised in her home. (D.E. 32-7). Duncan states, "I lost my home **when I didn't have to**." (D.E. 32-7) (emphasis added). Duncan's words indicate that she would have accepted a trial modification and wanted to remain in her home.

Wells Fargo forced Duncan to incur $24,000.00 in settlement charges at closing including $21,000.00 for the forced use of a real estate agent, despite Wells Fargo being aware that Duncan

had secured a buyer for $350,000.00. (D.E. 32, ¶¶ 44-46, 62(B)). Duncan owed $329,800.20 to Wells Fargo. (D.E. 32-3). Wells Fargo's requirement that Duncan use a real estate agent took thousands of dollars away from Duncan at a time that she could have used the money to restart her life.

The value of Duncan's home "increased by approximately $50,000.00 since the forced short sale." (D.E. 32, ¶ 62(C)). In *D'Agostino v. Maldonado*, the New Jersey Supreme Court held that loss of equity in a home can qualify as an ascertainable loss. 78 A.3d 527, 531 (N.J. 2013) ("[T]ransfer of plaintiffs' equity in their home to defendant constituted an ascertainable loss for purposes of N.J.S.A. 56:8-19."). "A court adjudicating a CFA claim determines whether the plaintiff has suffered an ascertainable loss, focusing on the plaintiff's economic position resulting from the defendant's consumer fraud." *Id.* at 543. "[I]t is well-settled that loss of equity in a property constitutes ascertainable loss under the CFA." *Pasquale v. Influential Partners, LLC*, Civil Action No. 3:16-cv-00012 (PGS)(TJB), 2016 U.S. Dist. LEXIS 55901, at *6 (D.N.J. Apr. 26, 2016). Wells Fargo took away Duncan's opportunity to rehabilitate her credit standing. (D.E. 32, ¶ 62(G)). Wells Fargo waited over five years to reach out to consumer reporting agencies to ask them to remove any negative reporting. (D.E. 32-5).

Additionally, Duncan suffered extreme emotional distress due to the faulty calculation error, continuance of the foreclosure after the error, loss of her home, and having to move to a virtually uninhabitable apartment due to Wells Fargo's negative credit reporting. (D.E. 32, ¶ 62(E)). Duncan's emotional distress required medical treatment for panic attacks. (D.E. 32, ¶ 62(F)). While these damages are not traditionally considered to be "ascertainable losses" necessary to bring a CFA claim, they are considered "damages sustained" – i.e. if a plaintiff proves an ascertainable loss, the plaintiff can recover for all damages sustained including non-economic

damages. *Ferguson v. JONAH*, 143, 136 A.3d 447, 455-456 (N.J. Super. Ct. 2014). Further, the CFA permits a Court to award "additional damages" in the form of "any other appropriate legal or equitable relief." N.J.S.A. § 56:8-19. "The CFA contemplates that courts will fashion individualized relief appropriate to the specific case, combining legal and equitable remedies in some settings." *D'Agostino*, 78 A.3d at 545. As the CFA does not place any limit on "any other appropriate legal or equitable relief" and taking into consideration Wells Fargo's conduct, Duncan believes the award of emotional distress damages is appropriate in the instant matter.

Wells Fargo's reliance on *Mickens v. Ford Motor Co.,* 900 F. Supp. 2d 427 (D.N.J. 2012) is misplaced because the distinguishable factual circumstances. In *Mickens*, the plaintiff alleged that, if the defendant reported a vehicle defect to the New Jersey Division of Consumer Affairs ("DCA"), a third-party, the DCA would have taken certain actions. *Id.* at 438. Allegedly, those actions would have "dissuaded or prevented" the plaintiff from purchasing the vehicle. *Id.* The Court found no causal link because the plaintiff did not allege that he would have even considered the guidance of the DCA. *Id.* ("In short, there is no plausible factual allegation that a report to the Division of Consumer Affairs, if it had occurred, would have 'prevented' this purchase."). Further, the plaintiff failed to "allege facts to establish that the Division of Consumer Affairs has the power to take any of the hypothetical remedial actions that he alleges or, having that power, would exercise it." *Id.* at 439. Further highlighting Wells Fargo's misplaced reliance on *Mickens*, the Court states, with respect to the plaintiff's second and third CFA claims:

> **These causation allegations are statements by Mickens about his own knowledge and intent, facts within his control.** They do not share the infirmity of the causation allegations in Count I, which required speculation about intervening actions that the Division of Consumer Affairs would have taken if Ford had reported the defect, and the actions Mickens and other consumers would have taken as a result.

*Id.* at 447 (emphasis added).

10

Duncan' causation allegations are also statements by Duncan about her own knowledge and intent, or facts within her control. Duncan did everything Wells Fargo asked of her for two years and intended to remain in her home. Wells Fargo, through the faulty calculation error, took away the opportunity for Duncan to remain in her home and caused her to suffer both pecuniary and non-pecuniary damages, and then concealed its malfeasance for at least three years.

### 2. Duncan Plausibly Pleads that Wells Fargo Knowingly Concealed the Faulty Calculation Error and Intended that Duncan Rely Upon the Concealment.

Although Wells Fargo argues otherwise, Duncan's claims based on Wells Fargo's misrepresentation that she did not qualify for a trial modification and Wells Fargo's failure to correct the faulty calculation error before October 2015 do not constitute the knowing concealment, suppression, or omission of material facts. These actions by Wells Fargo are properly classified as a misrepresentation and unconscionable commercial practice, respectfully.

The Third Circuit holds that "malice, intent, knowledge, or other conditions of a person's mind may be alleged generally." *Kennedy v. Am. Airlines Inc.*, 760 F. App'x 136, 140 (3d Cir. 2019). A plaintiff can allege factual information that "lend themselves to a reasonable inference" that the defendant had knowledge of or should have known of a false representation. *Id.* at 140-141. With Duncan's two claims that Wells Fargo knowingly concealed, suppressed, or omitted information, Duncan has pleaded facts to support a reasonable inference that Wells Fargo knowingly concealed or omitted the faulty calculation error from Duncan for a minimum of three years and Wells Fargo refuses to provide complete information to Duncan related to the faulty calculation error and how it corrected the error. (D.E. 32, ¶¶ 72, 75; D.E. 32-4).

Through its Form 10-Q, Wells Fargo admits that it corrected the faulty calculation error on or about October 20, 2015. (D.E. 32-4). Wells Fargo conveniently waited until June 30, 2018 to

disclose this information to the public. (D.E. 32-4). Wells Fargo claims that it "substantially completed its internal review" and "accrued $8 million to remediate customers." (D.E. 32-4). Well Fargo corrected the faulty calculation error in 2015, waited three years to complete its internal review, and waited until it had $8 million set aside to inform the public. Wells Fargo then waited over two more months to notify Duncan of the existence of the faulty calculation error. (D.E. 32-5). Wells Fargo may have provided Duncan with her loan file, but, despite completing an internal review, it has failed to explain how the faulty calculation error impacted the wrongful July 2013 decision or how it corrected the error. Wells Fargo's conduct in waiting to release information related to the faulty calculation error and only providing vague information related to the faulty calculation error supports the inference that Wells Fargo knowingly concealed, suppressed, or omitted this information to avoid further governmental oversight, penalties, and potential legal claims. Duncan relied on Wells Fargo's silence as she could not file the instant matter in 2015 because she lacked any knowledge related to the faulty calculation error. Instead of timely addressing potential legal claims when information and witnesses are more readily available, Wells Fargo has delayed resolution of Duncan's legal claims.

## C.   DUNCAN SUFFICIENTLY ALLEGES A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

In New Jersey, every contract contains an implied covenant of good faith and fair dealing. *Sons of Thunder, Inc. v. Borden, Inc.*, 690 A.2d 575, 587 (N.J. 1997). Wells Fargo conveniently leaves out an important phrase from its quote of the elements of a claim for breach of the implied covenant of good faith and fair dealing:

> In order to succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that: (1) a contract exists between the plaintiff and the defendant; (2) the plaintiff performed under the terms of the contract **[unless excused]**; (3) the defendant engaged in conduct, apart from its contractual obligations, without good faith and for the purpose of depriving the plaintiff of the

rights and benefits under the contract; and (4) the defendant's conduct caused the plaintiff to suffer injury, damage, loss or harm.

*Graddy v. Deutsche Bank*, No. 11-3038 (RBK/KMW), 2013 U.S. Dist. LEXIS 41203, at *12 (D.N.J. Mar. 25, 2013) (emphasis added).

Duncan alleges that she was in privity of contract with Wells Fargo through her mortgage loan. (D.E. 32, ¶ 79). Duncan alleges that Wells Fargo breached its duty by delaying the loss mitigation process, denying Duncan the benefit of a trial modification based on the calculation error, and continuing the foreclosure process. (D.E. 32, ¶ 81). As discussed, *supra*, Wells Fargo's conduct directly and proximately caused Duncan's actual damages - Wells Fargo's delay of the loss mitigation process, wrongful denial, and continuance of the foreclosure process ultimately resulted in Duncan losing her home as well as other pecuniary and non-pecuniary losses.

**1.    Wells Fargo Engaged in Conduct Without Good Faith and for the Purpose of Foreclosing on Duncan's Home.**

Good faith is defined as "honesty in fact and the observance of reasonable conduct that does not violate community standards of fair dealing in the trade." N.J.S.A. § 12A:2-103(1)(b). "The obligation to perform in good faith exists in every contract, including those contracts that contain express and unambiguous provisions permitting either party to terminate the contract without cause." *Sons of Thunder*, 690 A.2d 575, 587 (N.J. 1997). The New Jersey Supreme Court holds that there is no requirement to allege a breach of an express term of a contract. *Id.* at 588 (citations omitted).

Duncan alleges that Wells Fargo breached the implied duty by delaying the loss mitigation process, wrongfully denying her a trial modification based on the calculation error, and continuing the foreclosure process. (D.E. 32, ¶ 81). Wells Fargo subjected Duncan to its repetitive and tedious loss mitigation process for two years, where Duncan gave Wells Fargo everything it asked for and

jumped through every hoop Wells Fargo asked her to jump through, when at the same time Wells

Fargo's lawyers harassed her. (D.E. 32, ¶ 40; D.E. 32-7). Wells Fargo filed a foreclosure action

while Duncan had a loss mitigation application pending. (D.E. 32, ¶ 41). Most importantly, Wells

Fargo wrongfully denied Duncan a trial modification in June 2013 that Wells Fargo admits that it

would have offered her. (D.E. 32, ¶¶ 42, 49, 51). Considering Duncan's allegations of Wells

Fargo's repeated failure to adhere to consent orders to maintain adequate governance and controls

to ensure it was properly considering loan modification requests and not improperly moving for

foreclosure, it is apparent that Wells Fargo failed to observe "reasonable conduct that does not

violate community standards of fair dealing in the trade." N.J.S.A. § 12A:2-103(1)(b).

### 2. Wells Fargo's Conduct Shows that It Did Not Consider Duncan's Breach of the Mortgage Loan to a Material Breach or Excused Duncan's Performance.

"Whether the breach of a contract is material is generally an issue of fact." *Norfolk S. Ry.*

*Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008). The New Jersey Supreme Court adopted

the factors test of Restatement (Second) of Contracts § 241 to determine whether a breach is

material:

> (a) the extent to which the injured party will be deprived of the benefit which he
> reasonably expected; (b) the extent to which the injured party can be adequately
> compensated for the part of that benefit of which he will be deprived; (c) the extent
> to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure
> his failure, taking account of all the circumstances including any reasonable
> assurances; and (e) the extent to which the behavior of the party failing to perform
> or to offer to perform comports with standards of good faith and fair dealing.

*Grande Vill. LLC v. CIBC Inc.*, No. 1:14-cv-3495 (NLH/JS), 2018 U.S. Dist. LEXIS 80662, at

*77-79 (D.N.J. Mar. 30, 2018) (internal citations omitted). Four out of the five factors support an

inference that Wells Fargo did not treat Duncan's breach as a material breach before it wrongfully

denied Duncan for a trial modification.

14

First, Wells Fargo could be adequately compensated for the benefit it was deprived, monthly mortgage payments from Duncan, through a loan modification that would have allowed Wells Fargo to charge interest on all amounts past due. Second, Duncan suffered forfeiture of her home. Third, Duncan spent two years trying to offer to perform on her mortgage loan by entering into a loan modification which would cure her failure. Fourth, Duncan suffered financial distress and was unable to make her monthly mortgage payments – there is no evidence of a lack of good faith on her part. Admittedly, the first factor likely favors Wells Fargo because it did not receive monthly mortgage payments which it reasonably expected to receive. Wells Fargo's conduct shows that the failure to make monthly mortgage payments, without the review of the factual circumstances, is not necessarily a material breach of the mortgage loan.

Even if Duncan's failure to make her monthly mortgage payments while awaiting Wells Fargo's decision on her two loan modification applications is considered a material breach, Wells Fargo's conduct excused any breach because Wells Fargo itself committed a material breach by violating the implied covenant of good faith and fair dealing. In *Grande Vill. LLC*, the plaintiff failed to make payments under the terms of a loan and the Court held that it was a material breach. 2018 U.S. Dist. LEXIS 80662 at *86-89. The Court denied summary judgment because the plaintiffs claimed that they were excused from making payments because of the defendant's breach of the implied covenant. *Id.* at *88-89. In the instant matter, Duncan alleges that Wells Fargo breached the implied duty, before Wells Fargo wrongfully denied Duncan a trial modification, by delaying the loss mitigation process and continuing the foreclosure process. (D.E. 32, ¶ 81).

The Court in *Biederman v. Mitsubishi Motors Credit of Am.*, 753 A.2d 1251 (N.J. Super. Ct. 2000), not discuss whether the defendant observed reasonable conduct that did not violate community standards of fair dealing in the trade. *Biederman* concerned an automobile lease, not a

15

home mortgage loan and a servicer participating in the HAMP program. Further, there are no allegations that the defendant subjected the plaintiff to two years of loss mitigation related to the automobile lease or wrongfully denied the plaintiff the right to keep the automobile based on a miscalculation. In *Westmont Dev. Grp., LLC v. Twp. of Haddon*, where there was a provision in the contract that "either party's lack of insistence on strict performance did not constitute a waiver of the contract's terms." 625 F. Supp. 2d 178, 196 (D.N.J. 2009). The opposite is true in the instant matter, Wells Fargo's participation in the HAMP program evidences that Wells Fargo expected some borrowers to default on their mortgage loans and would purportedly work with them before moving for foreclosure.

**D.     DUNCAN SUFFICIENTLY ALLEGES A CLAIM FOR COMMON LAW FRAUD**

The five elements of common-law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Gennari v. Weichert Co. Realtors*, 691 A.2d 350 (N.J. 1997). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Duncan sufficiently alleges each of the five elements. First, she alleges that "Wells Fargo made material misrepresentations of a presently existing or past fact when it misrepresented to Duncan in 2013 that she did not qualify for a loan modification." (D.E. 32, ¶ 86). Next, "Wells Fargo was aware of this faulty calculation since at least October 20, 2015 yet continued to conceal this error from Duncan until discretely disclosing this information in [its] August 3, 2018 10-Q." (D.E. 32, ¶ 87). Further, "Wells Fargo continues to conceal the details surrounding the 'faulty calculation' error and refuses to provide Duncan with more information related to her loss

mitigation denial and how Wells Fargo discovered and corrected the error." (D.E. 32, ¶ 88). Since Duncan is not currently aware of when Wells Fargo actually discovered the calculation error, Wells Fargo was well aware of the myriad of issues with its loss mitigation department, and Wells Fargo failed to notify Duncan of the calculation error for nearly three years after it was purportedly corrected, Duncan alleges that Wells Fargo knew that its representation that she did not qualify for a temporary modification was false. (D.E. 32, ¶¶ 87-89). Wells Fargo intended that Duncan rely on its misrepresentation and concealment in order to take her home through the foreclosure process and avoid potential legal claims. (D.E. 32, ¶ 90). Duncan reasonably relied on Wells Fargo's misrepresentation and concealment because there was no possible way for her to discover the wrongful denial until she received the September 12, 2018 letter from Wells Fargo. (D.E. 32, ¶ 91). Wells Fargo's conduct directly and proximately caused Duncan to suffer tort damages in the form of extreme emotional distress damages and reputation injury to her credit. (D.E. 32, ¶ 62(E)-(F)). Duncan's emotional distress has manifested as panic attacks. (D.E. 32, ¶ 62(E)).

Duncan pleads that Wells Fargo's "inexplicable conduct in failing to notify Duncan of the 'faulty calculation' for nearly three years after the error was corrected" indicates that Wells Fargo knew its representations were false. (D.E. 32, ¶ 89). Duncan refers to the error as a "faulty calculation" because that is the term that Wells Fargo penned. (D.E. 32-4; D.E. 32-5). Wells Fargo continues to conceal the details related to the faulty calculation and refuses to provide Duncan with more information explaining how this calculation caused her to be denied for a trial modification or how Wells Fargo discovered and corrected the error. (D.E. 32, ¶ 88). Duncan alleges that Wells Fargo learned of the error "**since at least** October 20, 2015." (D.E. 32, ¶ 87) (emphasis added). Since Wells Fargo will not provide information related to the faulty calculation and concealed its existence for at least three years, it is plausible that Wells Fargo concealed its existence for much

longer. Wells Fargo's reliance on *Wilkins v. ING Bank FSB*, Civil Action No. 10-5334 (SRC), 2011 U.S. Dist. LEXIS 101560 (D.N.J. Sep. 1, 2011), is misplaced because the plaintiff failed to allege the subject and author of the misrepresentation. In the instant matter, Duncan clearly pleads (and Wells Fargo admits) that Wells Fargo wrongfully denied Duncan a trial modification. (D.E. 32, ¶ 86; D.E. 32-5).

Duncan relied on Wells Fargo's wrongful denial because she entered into the short sale agreement that Wells Fargo pushed her towards. (D.E. 32, ¶ 90). Duncan relied on Wells Fargo's concealment by abandoning her fight to stop foreclosure and not bringing potential legal claims for years. (D.E. 32, ¶¶ 90-91). Although Duncan could not have reversed the sale in 2015, she could have sued Wells Fargo for monetary relief. Again, Wells Fargo's wrongful denial caused Duncan to lose her home - if Wells Fargo offered Duncan a trial modification, Duncan intended to meet all the requirements set by Wells Fargo in order to remain in her home. (D.E. 32-5; D.E. 32-7).

## E.   DUNCAN SUFFICIENTLY ALLEGES A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under New Jersey law, to establish a prima facie claim for intentional infliction of emotional distress ("IIED"), a plaintiff must show: "(1) that the defendant intended to cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the actions proximately caused emotional distress; and (4) that plaintiff's emotional distress was severe." *Witherspoon v. Rent-A-Center, Inc.*, 173 F. Supp. 2d 239, 242 (D.N.J. 2001) (citing *Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988)). "*An intentional infliction of emotional distress claim is rarely dismissed on a motion to dismiss.*" *Acevedo v. Monsignor Donovan High Sch.*, 420 F. Supp. 2d 337, 349 (D.N.J. 2006) (emphasis added).

Duncan's fourth claim is for intentional infliction of emotional distress, and the FAC alleges all of these elements. Specifically, Duncan alleges that Wells Fargo: (1) engaged in extreme and outrageous conduct; (2) recklessly disregarded the probability that its conduct would cause emotional distress to Duncan; and, (3) did in fact cause Duncan to suffer severe emotional distress. (D.E. 32, ¶¶ 96-103).

Wells Fargo first argues and cites to decisions in which courts have concluded that mere mistakes do not give rise to a claim for intentional infliction of emotional distress. Here, it is difficult to describe Wells Fargo's conduct in this case as anything but outrageous: it features years of bad faith and gross negligence, coupled with egregious refusals by the company's board of directors to remedy a known problem - even in the face of multiple government orders requiring it to do so. (D.E. 32, ¶¶ 13-38). Over the course of nearly a decade, Wells Fargo repeatedly failed to test the automated decision-making tool on which its customers' homes and wellbeing depended, ignored multiple consent decrees requiring it to implement adequate testing, and then concealed its discovery of systematic errors from regulators and the customers whose homes were foreclosed upon as a result of the errors. (D.E. 32, ¶¶ 13-38). Duncan lost her home not because of a good-faith mistake but because of Wells Fargo's repeated refusal to address a known problem.[1]

Wells Fargo next argues they "could not have been trying to inflict emotional distress on Duncan by concealing the error, as it would - by definition - have been trying to hide it from her." However, Duncan is required to show that Wells Fargo *either* "intend[ed] both to do the act and to produce emotional distress," *or* acted "in deliberate disregard of a high degree of probability

---

[1] Wells Fargo describes the FAC's details of the bank's repeated failures to test the automated decision-making tool it used to determine borrowers' eligibility for mortgage modifications, even in the face of a consent decree which put Wells Fargo on notice that it needed to implement such testing, as "irrelevant", but Wells Fargo fails to explain how or why the details are irrelevant. These allegations represent an implicit acknowledgment that the bank's deliberate and callous decision to put profits before the law indicate this was a deliberate undertaking preceded by years of inaction as opposed to a mere, singular mistake.

that emotional distress will follow." *Buckley,* 544 A.2d at 863. Duncan alleges Wells Fargo concealed its discovery of systematic errors from regulators and borrowers like Duncan for several years. (D.E. 32, ¶¶ 13-38). Wells Fargo should have known that its actions would create a high probability that individuals like Duncan would lose their homes. The FAC describes that as a result of Wells Fargo's conduct, Duncan sought medical treatment for panic attacks and as a result, Duncan should be compensated for the severe emotional distress she suffered due to years of gross negligence and bad-faith refusals to address known problems in the bank's mortgage modification and foreclosure practices. *See 49 Prospect St. Tenants Asso v. Sheva Gardens*, 547 A.2d 1134, 1147-1148 (N.J. App. Div. 1988) (Appellate Division found circumstances sufficient to support a claim for IIED despite concluding that defendants' conduct did not evidence an intent to inflict severe emotional distress).

## F.   DUNCAN WITHDRAWS HER CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE

Duncan hereby withdraws Counts Five and Six of the FAC against Wells Fargo.

## G.   THE ECONOMIC LOSS DOCTRINE DOES NOT APPLY TO DUNCAN'S NON-STATUTORY TORT CLAIMS

"The economic loss doctrine is a judicially created rule that prevents a party from being able to collect in negligence for **pecuniary** harm that is unaccompanied by personal injury or consequential damages to other property." *Kam Int'l v. Franco Mfg. Co.*, Civil Action No. 2:10-02733, 2010 U.S. Dist. LEXIS 135455, at *11 (D.N.J. Dec. 22, 2010) (emphasis added). "[D]uty is defined not by the contractual relationship between the parties but by considerations of foreseeability and fairness." *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1295 (N.J. 1994). "The New Jersey Supreme Court has long been a leader in expanding tort liability." *Lone Star Nat'l Bank, Nat'l Ass'n v. Heartland Payment Sys.*, 729 F.3d 421, 426-

427 (5th Cir. 2013) (quoting *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 295 (3d Cir. 1995) (Becker, J., dissenting)). "Tort principles, such as negligence, are better suited for resolving claims involving unanticipated injuries, and contract principles are generally more appropriate for determining claims for consequential damages that parties have or could have address[ed] in their agreement." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (internal citations omitted). "Tort principles are better suited to resolve claims for personal injuries or damages to other property." *Kearney v. Bayerische Motoren Werke Aktiengesellschaft*, No. 17-13544 (WHW-CLW), 2018 U.S. Dist. LEXIS 147746, at *42 (D.N.J. Aug. 29, 2018).

"In some circumstances, courts have held that when a plaintiff alleges a tort claim, that plaintiff may sue for both contract and tort remedies if the remedy provided by the tort claim is not available in the contract claim." *Bubbles N' Bows, LLC v. Fey Publ'g Co.*, Civil Action No. 06-5391 (FLW), 2007 U.S. Dist. LEXIS 60790, at *30 (D.N.J. Aug. 20, 2007). The economic loss rule has been applied to prohibit fraud claims that are not extraneous to the contract. *See Unifoil Corp. v. Cheque Printers & Encoders*, 622 F. Supp. 268, 271 (D.N.J. 1985). In cases involving "egregious" conduct of a bank, such as "the bank actively encourag[ing a] plaintiff to rely upon its advice and conceal[ing] its self-interest in promoting the transaction involved," such circumstances may support a duty of care. *United Jersey Bank v. Kensey*, 704 A.2d 38, 46 (N.J. Super. Ct. App. Div. 1997).

"Ability to foresee injury to a potential plaintiff ... is a crucial element in determining whether imposition of a duty on an alleged tortfeasor is appropriate." *Carter Lincoln-Mercury*, 638 A.2d at 1294. "When the plaintiffs are reasonably foreseeable, the injury is directly and proximately caused by defendant's negligence, and liability can be limited fairly, courts have endeavored to create exceptions to allow recovery." *People Express Airlines v. Consol. Rail Corp.*,

495 A.2d 107, 114-115 (N.J. 1985). "Particular knowledge of the economic consequences has suffced to establish duty and proximate cause." *Id.* at 114. "[A] defendant owes a duty of care to take reasonable measures to avoid the risk of causing economic damages, aside from physical injury, to particular plaintiffs or plaintiffs comprising an identifiable class with respect to whom defendant knows or has reason to know are likely to suffer such damages from its conduct." *Id.* at 116.

"The question [of whether a duty exists] is one of fairness and policy that 'involves identifying, weighing, and balancing several factors -- the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution.'" *Carter Lincoln-Mercury*, 638 A.2d at 1294. "The court must examine all of the attendant circumstances in light of those and other relevant considerations and must engage in a fact-based and principled analysis." *Jerkins v. Anderson*, 922 A.2d 1279, 1285 (N.J. 2007).

Duncan seeks recovery for non-pecuniary damages in the form of extreme emotional distress and reputational injury to credit. (D.E. 32, ¶¶ 62(E)-(F), 83, 92, 100). For this reason alone, the economic loss rule does not bar Duncan's remaining state law claims. Further, if this Court holds that emotional distress damages are not available under the CFA, Duncan will be left without a remedy. *See Lone Star*, 729 F.3d at 426 (5th Cir. 2013) (discussing New Jersey law). The economic loss rule should not be applied to the instant matter because Wells Fargo had an independent duty of care as: (1) The harm to Duncan was reasonably foreseeable; (2) Fairness and policy considerations support a duty of care; and, (3) The relationship between the parties required Wells Fargo to fully disclose information related to Duncan's wrongful denial and the impact of the faulty calculation error.

Wells Fargo admits that it wrongfully stated that Duncan did not qualify for a trial modification. (D.E. 32-5). Duncan, and the other borrowers affected by the faulty calculation error, constitute an "identifiable class" because Wells Fargo had reason to foresee that borrowers experiencing financial distress would suffer damage if Wells Fargo improperly handled their loss mitigation requests. Wells Fargo was aware that its loss mitigation procedures were riddled with errors. (D.E. 32, ¶¶ 12-22). Wells Fargo knew the particular circumstances of a loss mitigation denial would be Duncan losing her home, as Wells Fargo was simultaneously pursuing a foreclosure. (D.E. 32, ¶ 41). Liability is fairly limited because Wells Fargo has already identified who was affected by the faulty calculation error. (D.E. 32-4). If Wells Fargo complied with the 2011 consent orders, it could have easily avoided the risk of causing damage to Duncan.

When Duncan requested mortgage assistance, she had a lack of bargaining power and Wells Fargo had incentive to continue the foreclosure on her home. *See Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 955 (E.D. Cal. 2015) ("[T]he moral blame factor could easily tip in favor of Plaintiff because of the borrower's lack of bargaining power and the conflicts of interest that exist in the modern loan servicing industry."). The nature of the attendant risk was great as Duncan suffered injury when she lost her home. *Id.* ("Wells' decision would determine whether Plaintiff could keep his house, and it was foreseeable that failing to carefully process Plaintiff's loan modification could result in Plaintiff losing his house."). As discussed, *supra*, if Wells Fargo complied with the 2011 consent orders, it could have easily avoided the risk of causing damage to Duncan. The public interest in preventing mortgage servicers from taking money from the federal government and failing to properly implement loss mitigation procedures weighs in favor of Duncan. *Id.* ("[T]he policy of preventing future harm clearly weighs in favor of Plaintiff after the

23

passing of the HBOR, which 'demonstrates a rising trend to require lenders to deal reasonably with borrowers in default to try to effectuate a workable loan modification.'").

"Whether the party has a duty to disclose ... is a question of law." *Maertin v. Armstrong World Indus.*, 241 F. Supp. 2d 434, 461 (D.N.J. 2002). "Because the duty should arise 'where good faith and common decency require it,' the question requires 'a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution.'" *Id.* Duncan's argument regarding fairness and policy considerations applies to whether or not Wells Fargo had a duty to disclose the existence of the faulty calculation error to Duncan before September 2018. Wells Fargo's greater bargaining power, the loss of Duncan's home, statute of limitation issues related to Wells Fargo waiting years to disclose, and Wells Fargo's repeated failure to comply with consent orders and government oversight support that Wells Fargo failed to act with good faith and common decency.

## H.   DUNCAN IS ENTITLED TO PUNITIVE DAMAGES

"Punitive damages may be awarded [upon proof], by clear and convincing evidence, that the harm suffered was the result … acts or omissions, and such acts or omissions were actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. § 2A:15-5.12(a). To determine whether punitive damages should be awarded, the Court must consider all relevant evidence, including: "(1) The likelihood, at the relevant time, that serious harm would arise from the defendant's conduct; (2) The defendant's awareness of reckless disregard of the likelihood that the serious harm at issue would arise from the defendant's conduct; (3) The conduct of the defendant upon learning that its initial conduct would likely cause harm; and, (4) The duration of the conduct or any concealment of it by the defendant." N.J.S.A. § 2A:15-5.12(b). Actual malice is defined as an "intentional

wrongdoing in the sense of an evil-minded act." N.J.S.A. § 2A:15-5.10. Wanton and willful disregard is defined as a "deliberate act or omission with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission." N.J.S.A. § 2A:15-5.10.

In her common law fraud and intentional infliction of emotional distress claims, Duncan alleges that her damages, directly and proximately caused by Wells Fargo, were foreseeable as Wells Fargo knew Duncan would lose her home after Wells Fargo improperly denied her a trial modification. (D.E. 32, ¶¶ 93, 102). Further, Wells Fargo was simultaneously pursuing foreclosure and reviewing Duncan's eligibility for a loan modification, or engaging in dual tracking, a currently prohibited practice. (D.E. 32, ¶ 41). If Wells Fargo was aware of the faulty calculation error when it denied Duncan for a trial modification, a plausible inference considering Wells Fargo concealed information related to the faulty calculation error for years, Wells Fargo's actions were intentional and designed to take Duncan's home.

Even if Wells Fargo's actions do not constitute actual malice, Wells Fargo's conduct constitutes wanton and willful disregard because Wells Fargo was aware of the myriad of errors with its loss mitigation process and took a mindset of reckless indifference to the consequences of wrongfully denying Duncan for a trial modification and concealing that fact from Duncan, Wells Fargo shareholders, and Federal and State Regulators for more than three years. Through the 2011 consent orders, Wells Fargo was required to maintain adequate governance and controls to ensure compliance with HAMP. (D.E. 32, ¶¶ 18-22). However, Wells Fargo continued to defy its compliance obligations until further penalty in June 2015, and it is not clear if Wells Fargo is in compliance presently. (D.E. 32, ¶¶ 23-38).

Only Wells Fargo's words indicate that the faulty calculation error was a "mistake". Without information explaining the nature of the faulty calculation error, Wells Fargo's admitted concealment of the existence of the faulty calculation error for at least three years suggests that Wells Fargo tried to hide the faulty calculation error. Wells Fargo was required to regularly review its loss mitigation procedures - either Wells Fargo knew about the faulty calculation error and ignored it, or its reckless indifference to the consequences of failing to comply with government regulation resulted in incompetent reviews. Whatever the state of mind, Wells Fargo has had too many chances to comply with government oversight and failed to avoid harming its customers. The four factors of N.J.S.A. § 2A:15-5.12(b) weigh in favor of Wells Fargo being subject to punitive damages.

## VI.    CONCLUSION

Plaintiff Kimberly Duncan has sufficiently pleaded all of her claims against Defendant Wells Fargo Bank, N.A. and respectfully requests this Court deny the motion to dismiss and all other relief this Court may deem just and proper.

Respectfully submitted,

/s/ Javier L. Merino
Javier L. Merino
Marc E. Dann
**DANN LAW**
372 Kinderkamack Road, Suite 5
Westwood, NJ 07675
Phone: 216-373-0539
Fax: 216-373-0536
notices@dannlaw.com
*Counsel for Plaintiff Kimberly Duncan*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2019, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

/s/ Javier L. Merino
Javier L. Merino
Marc E. Dann
**DANN LAW**
*Counsel for Plaintiff Kimberly Duncan*