# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| KIMBERLY DUNCAN, | |
| Plaintiff, | |
| v. | Case No. 3:19-cv-00172-BRM-TJB |
| WELLS FARGO BANK, N.A., | |
| Defendant. | (Filed Electronically) |

---

## WELLS FARGO BANK, N.A.'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

# **<u>TABLE OF CONTENTS</u>**

**Page**

ARGUMENT ...................................................................................................1

    A.    Duncan Has Not Sufficiently Pled the Knowledge, Reliance, or Causation Elements of Her Fraud-Based Claims..................................1

    B.    Duncan's Implied Covenant Claim Should Be Dismissed ..................8

    C.    The IIED Allegations Fall Far Short of New Jersey's High Bar ..........9

    D.    Duncan's Economic Loss Arguments Are Futile ..............................12

    E.    Duncan Is Not Entitled to Punitive Damages ....................................14

CONCLUSION ...............................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcand v. Brother Int'l Corp.*,
   673 F. Supp. 2d 282 (D.N.J. 2009) .......................................................................4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..............................................................................................1, 15

*Biederman v. Mitsubishi Motors Credit of Am., Inc.*,
   753 A.2d 1251 (N.J. Super. L. Div. 2000) ...........................................................8

*Buckley v. Trenton Sav. Fund Soc'y*,
   111 N.J. 355 (1988) ...........................................................................................9, 11, 15

*Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*,
   638 A.2d 1288 (N.J. 1994) ...................................................................................13

*Fink v. Bishop*,
   2015 U.S. Dist. LEXIS 77589 (D.N.J. June 16, 2015) .......................................7

*Fogarty v. Household Fin. Corp. III*
   2015 U.S. Dist. LEXIS 23064 (D.N.J. Feb. 25, 2015) .......................2, 3, 10, 12

*Frungillo v. Imperia Entm't, Inc.*,
   2009 U.S. Dist. LEXIS 89863 (D.N.J. Sept. 28, 2009) ......................................15

*Gorodeski v. U.S. Bank N.A.*,
   2016 U.S. Dist. LEXIS 2862 (D.N.J. Jan. 11, 2016) ..........................................10

*Hernandez v. M&T Bank*,
   2016 U.S. Dist. LEXIS 23936 (D.N.J. Feb. 25, 2016) .......................................8

*Hoffman v. Citibank, N.A*
   2018 U.S. Dist. LEXIS 148059 (D.N.J. Aug. 30, 2018) (Martinotti,
   J.)..........................................................................................................................10, 16

*Hoffman v. Liquid Health, Inc.*,
   2014 WL 2999280 (D.N.J. July 2, 2014) ............................................................4

*Kraft v. Wells Fargo & Co.*,
  2019 U.S. Dist. LEXIS 127579 (D.N.J. July 31, 2019) (Martinotti,
  J.)..................................................................................................................13

*Marias v. Bank of Am., N.A.*,
  2015 U.S. Dist. LEXIS 86121 (D.N.J. July 1, 2015) .........................................13

*Marrero v. Camden Cty. Bd. of Soc. Servs.*,
  164 F. Supp. 2d 455 (D.N.J. 2001)....................................................................11

*Martino v. Everhome Mortg.*,
  639 F. Supp. 2d 484 (D.N.J. 2009)....................................................................14

*McKenna v. Bank of Am.*,
  2010 WL 2985643 (D.N.J. July 26, 2010) ..........................................................5

*Mickens v. Ford Motor Co.*,
  900 F. Supp. 2d 427 (D.N.J. 2012)......................................................................6

*Mosley v. Del. River Port Auth.*,
  2000 U.S. Dist. LEXIS 22402 (D.N.J. Aug. 7, 2000) .......................................11

*Pim Brands LLC v. Cabot Acquisition, LLC*,
  2008 N.J. Super. Unpub..................................................................................14

*Rudel Corp. v. Heartland Payment Sys., Inc.*,
  2016 WL 4472944 (D.N.J. Aug. 23, 2016) ..........................................................6

*Saltiel v. GSI Consultants, Inc.*,
  170 N.J. 297 (2002) .........................................................................................14

*Skypala v. Mortg. Elec. Registration Sys., Inc.*,
  655 F. Supp. 2d 451 (D.N.J. 2009)....................................................................13

*Sons of Thunder v. Borden, Inc.*,
  690 A.2d 575 (1997).............................................................................................9

*Tafaro v. Six Flags Great Adventure, LLC*,
  2018 WL 1535289 (D.N.J. Mar. 29, 2018) ........................................................15

*U.S. Bank N.A. v. Curcio*,
  444 N.J. Super. 94 (Super. Ct. App. Div. 2016)..................................................9

iv

*Williams v. Wells Fargo Bank, N.A.*,
  2016 WL 4370033 (D.N.J. Aug. 9, 2016) ........................................................11

**Statutes**

N.J.S.A. 2A:15-5 ...........................................................................................15

New Jersey Consumer Fraud Act ...........................................................................3

**Other Authorities**

Fed. R. Civ. P.  9(b) .................................................................................1, 3, 7

Fed. R. Civ. P. 12(b)(6) ...............................................................................1

Duncan's Opposition to the Motion to Dismiss the First Amended Complaint ("FAC") brings into stark relief the reasons the Motion should be granted. *First*, Duncan's fraud-based claims should be dismissed for failure to plead Wells Fargo's knowledge of erroneous denials at the alleged times of denial or concealment, intent that Duncan rely on the alleged concealment, or plausible detrimental reliance. *Second*, Duncan has failed to correct her fatally speculative causation allegations and thus failed to state any of her claims. *Third*, Duncan's intentional infliction of emotional distress ("IIED") allegations fall far short of New Jersey's "exceedingly high" standard. *Fourth*, Duncan's non-statutory tort claims warrant dismissal under the economic loss doctrine. Rules 12(b)(6) and 9(b) spare none of Duncan's claims given these pleading defects. The FAC should be dismissed.

## ARGUMENT

### A.  Duncan Has Not Sufficiently Pled the Knowledge, Reliance, or Causation Elements of Her Fraud-Based Claims

<u>Knowledge</u>.  Apparently recognizing she has failed to sufficiently plead the elements of her fraud-based claims, Duncan argues in essence that she should be permitted to substitute rampant speculation for the pleading requirements of *Twombly*, *Iqbal*, and Rule 9(b) because Wells Fargo did not provide her with full discovery before she filed her FAC.[1]  Throughout the Opposition, Duncan blames

---

[1] Wells Fargo voluntarily provided Duncan her entire loan file before she filed the FAC.  Opp'n at 12.

her inability to plead claim-critical facts on Wells Fargo's alleged failure to provide her with "the details related to the faulty calculation and . . . *more* information explaining how this calculation caused her to be denied for a trial modification or how Wells Fargo discovered and corrected the error." *E.g.* Opp'n at 17, 12.[2] Duncan reiterates this excuse notwithstanding that she has not alleged any legal duty Wells Fargo has to provide her this information, nor is Wells Fargo aware of one. *Compare Fogarty v. Household Fin. Corp. III*, No. 14-4525 (RBK/JS), 2015 U.S. Dist. LEXIS 23064, at *28 n.9 (D.N.J. Feb. 25, 2015):

> Plaintiff apparently also argues [defendant] engaged in misrepresentation by failing to disclose information where it was under a duty to do so. However, Plaintiff has not indicated what obligated [defendant] to disclose information to Plaintiff . . . Likewise, Plaintiff has made numerous allegations concerning what documentation [defendant] apparently failed to provide in order to facilitate her investigation of the fraud, but she has not alleged that [defendant] was required to provide her with that information upon her request.

The *Fogarty* court rejected the fraud claim as a matter of law, finding that the plaintiff failed to allege "any facts suggesting [defendant] actually knew it was making misrepresentations to [her]." *Id*. at *28.

Duncan's FAC suffers from the same defects: she baselessly interposes that Wells Fargo knew the denial of Duncan's trial modification was erroneous when made and during the alleged period of concealment. *See, e.g.*, Opp'n at 17. But the

---

[2] Unless otherwise indicated, emphases have been added and internal citations and quotation marks omitted throughout.

FAC alleges no facts as to when Wells Fargo learned that (i) the calculation error had impacted trial loan modification decisions, or (ii) that one of Duncan's trial loan modification applications had been impacted. Such unfounded allegations cannot satisfy the knowledge requirements of the New Jersey Consumer Fraud Act ("CFA") concealment and common law fraud claims under the heightened standard of Rule 9(b). *See Fogarty*, 2015 U.S. Dist. LEXIS 23064, at *29 (dismissing fraud claim where "only . . . conclusory allegations" suggested defendant could not "reasonably have investigated the matter and concluded" the conduct had not impacted plaintiff as claimed). Duncan's allegations that Wells Fargo knew "since at least October 20, 2015" that she had been impacted by the calculation error, just because it knew of the existence of the calculation error by that time, are equally conclusory and cannot support her fraud-based claims. *Id.*

Reliance. Duncan claims Wells Fargo intended that she rely on the alleged concealment in order to "take" her home by means of foreclosure and "avoid potential legal claims." Opp'n at 17. She asserts that she relied to her detriment on the alleged concealment by "abandoning her fight to stop foreclosure" and "not bringing potential legal claims for years." *Id.* at 17-18. These contentions fall short of the "onerous standard" Duncan must meet to state her fraud-based claims, as she cannot plead facts that demonstrate Wells Fargo intended that she rely on the alleged concealment, and her purported reliance thereon alleges harm that occurred *before*

3

she alleges the concealment period commenced.  *See Hoffman v. Liquid Health, Inc.*, No. 14–01838, 2014 WL 2999280, at *10 (D.N.J. July 2, 2014); Mot. at 18.

Duncan argues that she "reasonably relied" on the alleged concealment "because there was no possible way for her to discover the wrongful denial until she received the September 12, 2018 letter" (Opp'n at 17) and she therefore "could not file the instant matter in 2015" (*id.* at 12).  But Duncan does not allege facts to show, as she must, that Wells Fargo *intended* that reliance.  *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 291 (D.N.J. 2009) (citing N.J. Stat. § 56:8-2).  She offers only conclusory conjecture, but no facts, on this point.  *See* Opp'n at 17; FAC ¶ 91.  This pleading deficiency is fatal to Duncan's CFA claim, as CFA liability only attaches to an omission where the defendant acted "with the intention that the consumer rely upon the concealment."  *Arcand*, 673 F. Supp. 2d at 297.

Nor is Duncan's reliance argument plausible under the allegations in the FAC. Duncan claims that she "relied on Wells Fargo's concealment by abandoning her fight to stop foreclosure" (Opp'n at 18).  But by the time Duncan alleges the concealment began in 2015 (FAC ¶ 72), Duncan had already voluntarily sold the Property in a February 2014 short sale (FAC ¶ 45), and Wells Fargo had already obtained a foreclosure judgment on February 25, 2014 (FAC Ex. 2).[3]  Accordingly,

---

[3] Duncan concedes that she "could not have reversed the sale in 2015" but claims she could have instead "sued Wells Fargo for monetary relief."  Opp'n at 18.

Wells Fargo would not have intended that Duncan rely on any omission post-dating 2014 in order to "continue[] the foreclosure" for which it had already received a foreclosure judgment and short sale proceeds. The nonsensical timing upon which Duncan bases her argument renders implausible any allegation that the Bank "intended" for Duncan to rely on an omission in 2015. *Cf. McKenna v. Bank of Am.*, No. 10–1848 (JAP), 2010 WL 2985643, at *3 (D.N.J. July 26, 2010).

Duncan cannot even plausibly allege that there was an ongoing "fight to stop foreclosure" for her to abandon: between Wells Fargo's initiation of foreclosure in August 2012 and the court's entry of a foreclosure judgment on February 25, 2014 (*see* FAC Ex. 2), Duncan made exactly zero appearances in the foreclosure proceeding and filed not a single answer, objection, or other form in opposition to the impending foreclosure of her Property. *See id*. (foreclosure docket listing a single filing firm; noting request for default judgment; and documenting "Uncontested" judgment of foreclosure); *see also* RJN Ex. C (final foreclosure judgment stating "default [was] entered against all non-answering defendants"). Duncan therefore has not pled that she justifiably relied on the alleged 2015 omission by abandoning her foreclosure fight, and her fraud-based claims should be dismissed.

Causation. Unable to allege a coherent chain of causation, Duncan argues that she is not required to "plead allegations related to every single possible variable." Opp'n at 8. Hyperbole aside, Duncan *is* unequivocally obligated by the CFA to

"show there is a causal link between [her] loss and [defendant's] conduct." *Rudel Corp. v. Heartland Payment Sys., Inc.*, No. 16-2229, 2016 WL 4472944, at *5 (D.N.J. Aug. 23, 2016).  If any "variable" breaks the causal chain between Wells Fargo's conduct and Duncan's alleged loss, including a continued failure to make her mortgage payments, Duncan's CFA claim fails. *See id.*  The FAC does not allege Duncan would have (i) made the necessary payments to qualify for a permanent modification, or (ii) made all required payments under a permanent modification had she received one.  Even her Opposition asserts only that she "intended" to make her mortgage payments "in order to save her home."  Opp'n at 7-8.

As in the dismissed CFA claim in *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427 (D.N.J. 2012), Duncan's allegations depend upon a number of speculative events and intervening actions to establish causation.[4]  Furthermore, Duncan tries to analogize to the other CFA claims in *Mickens*, which survived because they were based on "statements by Mickens about his own knowledge and intent, facts within his control."  *Id.*  But Duncan's claims are based on Well Fargo's knowledge and

---

[4] As Duncan points out, *Mickens* dismissed one of plaintiff's CFA claims for lack of a causal nexus where plaintiff's allegations "required speculation about intervening actions that the [government] would have taken if Ford had reported the defect, and the actions Mickens and other consumers would have taken as a result."  Opp'n at 10.  Similarly, Duncan's allegations necessitate speculation about whether Wells Fargo would have ultimately granted Duncan a permanent modification (following her timely payments under a trial loan modification), and, if so, whether Duncan would have been able to make every payment until the mortgage was paid off.

intent—not her own.  *See, e.g.*, FAC ¶¶ 72, 90.  Thus, Duncan cannot allege a non-speculative chain of causation and her CFA claim should be dismissed.[5]

Heightened Pleading Standard.  Although Duncan contends her CFA and common law fraud claims meet the heightened pleading standard of Rule 9(b), the "details" she avers of the alleged concealment are not facts but conjecture and speculation.  *See* Opp'n at 3-4.  Allegations based on these sources are "insufficient to meet the heightened pleading standard of Rule 9(b), or the *Twombly*/*Iqbal* [] standard, which requires more than speculation that discovery will lead to evidence to support a claim."  *See Fink v. Bishop*, No. 13-3370 (NLH)(KMW), 2015 U.S. Dist. LEXIS 77589, at *4 (D.N.J. June 16, 2015) (dismissing fraud claim). Moreover, Duncan's allegations are based not only on omissions or concealment (*contra* Opp'n at 3), but admittedly on misrepresentations as well, which are indisputably subject to the "stringent pleading restrictions" of Rule 9(b).  *See, e.g.*, FAC ¶¶ 76, 86; Opp'n at 5 ("Duncan's CFA claim alleges that Wells Fargo . . . misrepresented to Duncan that she did not qualify for a trial modification"); *id*. at 11 ("[t]hese actions are properly classified as a misrepresentation").  This admission, and Duncan's speculative allegations, independently require dismissal of her fraud-based claims under Rule 9(b).  *Fink*, 2015 U.S. Dist. LEXIS 77589, at *4.

---

[5] These same causation issues warrant dismissal of Duncan's implied covenant and IIED claims as well.

**B.      Duncan's Implied Covenant Claim Should Be Dismissed**

This District has rejected claims that a bank breached the implied covenant by failing to timely process a mortgage loan modification request.  *See Hernandez v. M&T Bank*, No. 15-cv-470 (KM), 2016 U.S. Dist. LEXIS 23936, at *6 (D.N.J. Feb. 25, 2016).  This authority makes clear that Duncan cannot base her implied covenant claim on such conduct, because she cannot reasonably have expected the benefit of a trial modification under the Loan, *contra* Opp'n at 13-14, as "[a] creditor's duty to act in good faith does not encompass compromising its contractual rights in order to aid its debtor."  *Hernandez*, 2016 U.S. Dist. LEXIS 23936, at *6 ("A lender does not . . . defeat the other party's contractual rights by declining to renegotiate the contract.").

Tellingly, Duncan herself does not point the Court to a single case sustaining a breach of the implied covenant claim in the loan modification context, instead focusing on arguments excusing her own default.  *See* Opp'n at 12-16.  But Duncan cannot use her implied covenant claim to impugn Wells Fargo's right to foreclose under the express terms of the contract.  The New Jersey Supreme Court has held that "the implied covenant of good faith and fair dealing does not foreclose the [d]efendant from exercising its rights under the [contract] upon default by the [p]laintiff."  *Biederman v. Mitsubishi Motors Credit of Am., Inc.*, 753 A.2d 1251,

1255 (N.J. Super. L. Div. 2000);[6] *accord Sons of Thunder v. Borden, Inc.*, 690 A.2d 575, 586 (1997) ("the implied covenant of good faith and fair dealing cannot override an express termination clause").

Duncan's alternative arguments are specious.  Opp'n at 14-16.  Her own allegations undermine her excuse arguments, demonstrating that Wells Fargo treated Duncan's default as a "material breach" prior to denial (*contra* Opp'n at 14-15) by initiating foreclosure in August 2012 under the express terms of the contract[7] (FAC ¶ 41).  And even if true (it is not), her "dual tracking" argument (Opp'n at 25) is also unavailing.  *See U.S. Bank N.A. v. Curcio*, 444 N.J. Super. 94, 113 (Super. Ct. App. Div. 2016) ("Our Supreme Court has held that practice is lawful in New Jersey.").

Duncan thus fails to plead an implied covenant claim under New Jersey law.

## C.    The IIED Allegations Fall Far Short of New Jersey's High Bar

The Opposition does not cure Duncan's failure to plead a basic element of her IIED claim: that Wells Fargo's erroneous denial and alleged concealment of the erroneous denial were "extreme and outrageous."  *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988).  "[A]s a threshold matter," *contra* Opp'n at 18, "New Jersey's exceedingly high bar for IIED," requires Duncan to demonstrate the

---

[6] Duncan responds to in the authorities cited by Wells Fargo only to point out immaterial distinctions (*e.g.* Opp'n at 15-16, failing to explain why Court should disregard New Jersey Supreme Court precedent because implied covenant pertained to automotive instead of residential loan).

[7] *See* FAC Ex. 1, Acceleration: Remedies § 22; *see also* Mot. at 17-18.

9

alleged conduct was well beyond "unjust, unfair, and unkind." *Hoffman v. Citibank, N.A.*, No. 3:16-cv-4491-BRM-LHG, 2018 U.S. Dist. LEXIS 148059, at *10 (D.N.J. Aug. 30, 2018) (Martinotti, J.) (granting 12(b)(6) motion to dismiss IIED claim with prejudice).

A mistake, as committed by Wells Fargo here,[8] does not suffice to support an "extreme case[]" of outrageous conduct under New Jersey's "elevated threshold." *Id.* at *55, *63 ("[E]ven if [defendant's] decision [to seek payment or foreclosure based on allegedly fraudulent mortgage] was wrong, it was not extreme or outrageous, and Plaintiff's claim fails as a matter of law."). Nor does concealment (assuming Duncan had properly alleged it). *See Gorodeski v. U.S. Bank N.A.*, No. 15-2271 (ES) (JAD), 2016 U.S. Dist. LEXIS 2862, at *17-18 (D.N.J. Jan. 11, 2016) (not outrageous to "conceal[] the fact that the Loan was securitized," such that plaintiff was "threatened with loss of the Property"). The insufficiency of Duncan's allegations is no less glaring, as she alleges, at best, the belated concealment of a trial modification erroneously denied to a borrower who made no more than two monthly mortgage payments despite living in the Property for nearly three years. *See* FAC ¶¶ 39, 45; RJN Ex. B; *compare Fogarty*, 2015 U.S. Dist. LEXIS 23064, at

---

[8] As in *Fogarty*, "the only allegations in [Duncan's FAC] regarding [] motive . . . are couched as legal conclusions." 2015 U.S. Dist. LEXIS 23064, at *62-63.

*60-61 (not outrageous for servicer to notice intent to foreclose allegedly fraudulent mortgage where "delinquency of payments" was confirmed).

Duncan contends she has pled "extreme and outrageous" conduct by referencing "multiple government orders" and "multiple consent decrees" in the FAC, none of which are at issue in this case. Opp'n at 19-20. She argues the existence of these documents demonstrates "years of gross negligence and bad-faith" in which Wells Fargo failed to prevent the calculation error. *Id.* Yet even if Duncan were permitted to invoke previous conduct not involving her to support this point (she is not, *see infra* note 9), her IIED claim would still fail because even tortious intent is insufficient in New Jersey to establish extreme and outrageous conduct. *See, e.g.*, *Mosley v. Del. River Port Auth.*, No. 99-4147 (JBS), 2000 U.S. Dist. LEXIS 22402, at *41 n.11 (D.N.J. Aug. 7, 2000).[9]

---

[9] Moreover, a plaintiff can only recover for emotional distress "when the intentional conduct is directed at the plaintiff." *Buckley*, 111 N.J. at 367. Duncan does not allege any facts that would connect the past events to the calculation error at issue in this case. Her attempt to bootstrap alleged past "compliance failures, government fines, and consent decrees" to her claim (FAC ¶ 97) thus cannot plausibly suggest that Wells Fargo's conduct in *this* case was either outrageous or directed at Duncan, as she was party to none of these alleged events. *See Williams v. Wells Fargo Bank, N.A.*, No. 16-1003, 2016 WL 4370033, at *3 (D.N.J. Aug. 9, 2016) ("a consent decree is not enforceable . . . by those who are not parties to it").

Likewise, Duncan's assertion that Wells Fargo "put profits before the law," Opp'n at 19 n.1, even if true, would fall short of outrageous conduct because "an improper purpose does not give rise to an actionable [IIED] claim." *Marrero v. Camden Cty. Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 479 (D.N.J. 2001).

Duncan has not pled the requisite intent for her IIED claim.  Duncan argues that Wells Fargo "should have known that its actions would create a high probability that individuals like Duncan would lose their homes," Opp'n at 19-20, but she has not alleged facts suggesting Wells Fargo had any indication in 2015 that trial loan modifications had been erroneously denied, nor that her trial modification specifically had been affected.  *See supra* § A; *see generally* FAC.  Duncan's own conclusory determination that Wells Fargo should have reached a particular decision does not transform an erroneous denial into an outrageous one.  *See Fogarty*, 2015 U.S. Dist. LEXIS 23064, at *62:

> The only support Plaintiff marshals for the outrageousness of [defendant's] actions is her conclusion that it *should* have reached the same conclusion she did with respect to the fraud claim, in light of the available evidence.  But, even assuming . . . [defendant] should have determined that the [] Mortgage was obtained fraudulently, its failure to do so is not sufficiently outrageous.

Because Duncan has failed to plausibly plead "extreme and outrageous" and "intentional" conduct, her IIED claim should be dismissed.

### D.     Duncan's Economic Loss Arguments Are Futile

To avoid the economic loss doctrine, Duncan attempts to conjure a legal "duty of care" from an amalgamation of her own hardships and the unrelated consent orders referenced in the FAC.  Opp'n at 20-21.  However, the FAC does not even attempt to allege a non-contractual legal duty owed by Wells Fargo now that Duncan

has appropriately withdrawn her deficient negligence claims. *Id.* [10] And the Opposition fails to identify any other basis for such a duty. *See generally* Opp'n at 20-24; *see also Skypala v. Mortg. Elec. Registration Sys., Inc.*, 655 F. Supp. 2d 451, 460 (D.N.J. 2009). Further, as Duncan's own case law illustrates, courts only need to engage in fairness- and policy-based tests when there is a "question" as to whether an independent legal duty exists. *See, e.g.*, *Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1295 (N.J. 1994). There is no such question in this case, because this District has consistently reinforced the rule that, when processing a request for a loan modification, "[a] bank does not take on a specific independent duty imposed by law, and thus, the bank is not liable in tort to the borrower." *Marias v. Bank of Am., N.A.*, No. 14-4986 (RBK/JS), 2015 U.S. Dist. LEXIS 86121, at *8-9 (D.N.J. July 1, 2015); *see also* Mot. at 30-32, 26-28.[11]

That Duncan alleges "non-pecuniary damages" in the form of emotional distress and damage to her credit does not save her tort claims from the economic loss bar. *Contra* Opp'n at 22. Indeed, "it is axiomatic that a plaintiff may not recover

---

[10] The economic loss doctrine warrants dismissal of the remaining tort claims based on the lack of such allegations alone. *See Kraft v. Wells Fargo & Co.*, No. 16-cv-05729, 2019 U.S. Dist. LEXIS 127579, at *16 (D.N.J. July 31, 2019) (Martinotti, J.).

[11] Should the Court consider Duncan's balancing test (Opp'n at 22), it should reject out of hand her arguments concerning bargaining power (*id*. at 23-24) and the expansion of tort liability (*id*. at 20-21), as they are tellingly based on, respectively, out-of-circuit precedent (applying California common law and HBOR, a California-specific statute) and out-of-circuit precedent citing a Third Circuit dissent.

for emotional distress" on a claim arising out of a contractual relationship; this "proposition lies at the heart of the economic loss doctrine." *Martino v. Everhome Mortg.*, 639 F. Supp. 2d 484, 494-95 (D.N.J. 2009).

Likewise, Duncan cannot avoid the doctrine by claiming she "will be left without a remedy." *See* Opp'n at 22. New Jersey law excepts only foreseeable *third parties* from the economic loss bar, reasoning there is no contractual remedy because "no prior relationship existed between the [parties]" and "no contract defined the obligations of the parties." *Pim Brands LLC v. Cabot Acquisition, LLC*, 2008 N.J. Super. Unpub. LEXIS 3075, at *29 (Super. Ct. Nov. 21, 2008); *see also Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 317 (2002); *contra* Opp'n at 22 (citing *Lone Star Nat'l Bank, N.A. v. Heartland Payment Sys.*, 729 F.3d 421, 426 (5th Cir. 2013) (no economic loss bar on negligence claim of issuer banks that were third parties to vendor agreement between acquirer banks and credit card companies and would have no remedy if not in tort)). By contrast, Duncan undisputedly was in privity with Wells Fargo by virtue of the Note and Mortgage. FAC ¶ 79; Opp'n at 13.

The economic loss rule requires Duncan's remaining tort claims be dismissed.

### E. Duncan Is Not Entitled to Punitive Damages

Duncan insists that she is entitled to punitive damages for her common law fraud and IIED claims because "*[w]hatever the state of mind*, Wells Fargo has had too many chances to comply with government oversight." Opp'n at 26. Under New

Jersey law, however, Duncan must plausibly plead Wells Fargo's intent to establish an entitlement to this extraordinary remedy: "Punitive damages are not awarded for mere inadvertence, mistake, errors of judgment and the like." *Frungillo v. Imperia Entm't, Inc.*, No. 08-0908 (DRD), 2009 U.S. Dist. LEXIS 89863, at *11 (D.N.J. Sept. 28, 2009); *see also* Restmt. (Second) of Torts § 908(2), cmt. b (1979). Duncan has not sufficiently alleged "actual malice," "a wanton and willful disregard," or any "added element of egregious conduct" on the part of Wells Fargo because, as discussed *supra*, she has failed to plead that Wells Fargo acted intentionally or with deliberate disregard. *See* N.J.S.A. 2A:15-5; *supra* Sections B-C; Mot. at 32-33.[12] This pleading failure precludes entitlement to punitive damages on her tort claims. *Tafaro v. Six Flags Great Adventure, LLC*, No. 17-5607, 2018 WL 1535289, at *8–9 (D.N.J. Mar. 29, 2018); *Buckley*, 111 N.J. at 369-370.

---

[12] Duncan's contention that "[o]nly Wells Fargo's words" indicate that the error actually was a "mistake" flips the pleading burden on its head. Opp'n at 26. It is *Duncan's* obligation to plausibly plead facts demonstrating that the calculation error was *not* a mistake, and that the alleged concealment was in deliberate disregard of borrowers Wells Fargo should have known had been impacted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). This she has failed to do. *See* Mot. at 33; *supra* Sections A, C.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the First Amended Complaint should be dismissed.

Dated:  November 6, 2019

*/s/ Heather Elizabeth Saydah*

Heather Elizabeth Saydah
Angela A. Smedley (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-5312
(212) 294-4700 ~ Fax
hsaydah@winston.com
asmedley@winston.com

Kobi Kennedy Brinson (*pro hac vice*)
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
(704) 350-7747
(704) 350-7800 ~ Fax
kbrinson@winston.com

*Attorneys for Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that copies of the foregoing WELLS FARGO BANK, N.A.'S MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS DUNCAN'S FIRST AMENDED COMPLAINT was served by notice of electronic filing and electronic mail on November 6, 2019 upon:

> Javier L. Merino
> DANNLAW
> 372 Kinderkamack Road, Suite 5
> Westwood, NJ 07675
> jmerino@dannlaw.com
>
> *Attorney for Kimberly Duncan*

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated:  November 6, 2019

> */s/ Heather Elizabeth Saydah*
> Heather Elizabeth Saydah